All rise. The Supreme Court is now in session. Please be seated. Thank you. Madam Clerk, please call the next case. Mr Carlson, you may proceed. Yes, you may. All rise. I represent the defendant in this case, Jim's Office Lounge. The plaintiff, the estate of Nicole Parker, brought a dram shop action against Jim's office. The basic facts of the case came out during a jury trial in late April of 2009. The AIP in this case, the allegedly intoxicated person Gary Griglione, arrived at the bar at approximately 8.30 in April of 2005. The only evidence about the number of drinks that he was served came from a bartender who indicated that he was served two to three drinks. At the bar, Mr Griglione met up with the plaintiff's decedent, Nicole Parker, along with two other people, Roxanne Griglione and Jared Pratt. The four of them left at about 10 p.m. They came back to the bar at about 10.45. The bartender noticed that they seemed a lot happier and she did not serve them any more alcohol. They at that time left the bar. Shortly after midnight, the plaintiff and Gary Griglione were involved in a single vehicle motorcycle accident. Both of, both Nicole Parker and Gary Griglione died as a result of that. The autopsy report for Mr Griglione showed that he had a blood alcohol level of .218 and that he had methadone in the system. During the closing argument, my partner, Matthew Kruger, argued that this case was about personal responsibility because the plaintiff had been warned of the intoxication of Gary Griglione and she decided to get on the back of that motorcycle anyway. And he also made an argument that Gary Griglione and Roxanne Griglione were drug addicts. He referred to them as drug addicts. There was no objection to the initial argument regarding personal responsibility. As to the latter argument, there was an objection made regarding characterization of these two individuals as drug addicts. A post-trial motion was granted for the plaintiff to grant a new trial. In the post-trial motion, Judge Heddle found two reasons for granting a new trial. The two reasons were the comments in the closing argument regarding personal responsibility, which was not objected to, and also the comments about, he determined that the comments regarding drug addiction were inflammatory to the plaintiff. That specific objection was not made at trial. Rather, the objection at trial was to the characterization of these individuals as drug addicts. Since neither of these comments were objected to at trial, the waiver doctrine applies. And so the issue here, then before the court, is whether these two comments were plain error. In order to be plain error, these comments must have denied the plaintiff the right of a fair trial and they must have substantially impaired the judicial process. The first comment regarding personal responsibility was in fact a reference, was actually, excuse me, was actually a response to evidence that was adduced at trial. During trial, Roxanne Griglione, one of the witnesses, was asked whether she had warned Nicole not to ride on the back of the motorcycle. This evidence came in without objection. In fact, this evidence was raised during Roxanne Griglione's direct testimony and was raised by plaintiff's attorney. During closing argument, plaintiff's attorney did not object to these comments about personal responsibility and in fact made a tactical decision because in his rebuttal argument, he referred to the defendant's arguments and explained that that did not follow the law. As to the second issue which the judge granted the motion for new trial, there were objections regarding the characterization of Gary and Roxanne as drug addicts. Now, just to briefly comment on this, since those objections were made, I did discuss that in my brief. First of all, those comments were made twice. On both times, there was an objection which was sustained. Yes? I'm sorry, I thought I heard something. At any rate, the law is that if there's an objection which is sustained, the issue has been cured. I believe that those comments were cured by objection. Secondly, it means... Well, I mean, I think the law is not quite that black and white. I mean, but that can?  It can be curative? Yes, it can be curative. And I think in this case, it would be curative because any mischaracterization in this situation, I believe, was extremely slight. There was evidence that Gary Griglione indeed did have methadone in his system. There was also evidence that Roxanne Griglione had gone, had been convicted with a felony possession charge for methadone. I believe it's common knowledge that methadone is a highly addictive drug which is used actually to treat heroin which is another highly addictive drug. I believe it's a reasonable inference to say that these people were addicted because of their connection with highly addictive drugs. But that being said, what does Roxanne's use of drugs have to do in any way, shape, or form with the elements that need to be shown in order to prevail in a jam shop action? Well, the reason that was brought up with Roxanne was because she was a witness and we were raising questions about her credibility. That's why we brought up her drug conviction, was to raise questions about her credibility. That's why we also brought up the fact that she was married to Gary and that she had been named as a named defendant, or excuse me, her ex-husband, her husband, deceased husband had been named as a named defendant in this case to raise bias and question her credibility. In regards to Gary, the... Well, you were able to introduce, as you probably could, the fact that she was a convicted felon, correct? Yes. Okay. I mean, how much more gilding of a little idea do you have to do? You know, I believe that... I mean, when does it cross that line? Well... That it goes beyond just the jury or the fact finder calling into question the credibility based upon a prior act as opposed to talking about a characterization of someone in the present. In that regard, I think that the prejudice is to a witness. It's not even any prejudicial effect directly against the plaintiff. If we aligned, misaligned the witness in this case, Roxanne, then I don't see how that could ever be anything other than harmless error because, really, she's not a party to this suit. She is simply a witness. Now, I can understand your point here that that may have been pushing her a little too far, but, you know, I think our arguments were fair arguments to make. And the mischaracterization here was, you know, slight, as I've previously said. The objection which was specifically not made was that these comments were inflammatory and prejudicial. And that was the reason that the judge gave... one of the reasons which the judge gave for granting a new trial. Now, first of all, I think that, in my opinion, you can't expect in an adversarial process for somebody to not make a comment absent any objection when the evidence he feels is going to be beneficial to his client just because it could turn out to be viewed in the judge to be prejudicial. I think that it's the duty of the opposing counsel to make the objection, to raise it in a motion of limine or an objection, and have the judge determine whether the prejudicial effect outweighs the relevance of the comment. But as far as in this situation, I don't think that we should have in any way censured ourselves without any objection. Quite frankly, I don't see how either of the two reasons given by the trial court in this case could be considered plain error. I'm not even sure that they would be able to say that it would be more probably true than not that every judge would find that they were error at all. Are there any questions for me? I don't believe there are. Thank you. Okay. Thank you. Mr. Poporello? Poporello, excuse me. Yes, you may. May it please the court. My name is Brad Poporello and I'm one of the attorneys representing the estate of Nicole Parker in regards to this particular matter. I was the trial counsel in this case as well. Addressing some of the arguments made by the defendant first and foremost, I think it's important to remind the court, although I know you need not the reminder, that the standard of review in this sort of matter is an abuse of discretion. That in order to overturn the ruling of the trial court, in this case, Judge Joe Heddle, you would have to find that no reasonable person would agree with the position that he had taken in this particular matter. And I don't believe that there is an abuse of discretion in this particular matter. Judge Heddle presided over the trial. He presided over all aspects of the trial, including arguments that were made in chambers, on the record, and what have you. And he had the opportunity to sit and view the closing arguments. And so viewing, he was in the best position, I respectfully suggest, to weigh the effect of the verbal pause, nuances, and any emphases that were placed on any arguments during the course of it. To look at the jury, to see how the jury would respond to those arguments. And I think that he's in a very good position to make a determination as to whether or not comments are inflammatory, or whether or not they rise to the level of plain air. In this particular matter, the defendants indicate that, while the abuse of discretion standard is present, that Judge Heddle needed to apply further testing with regards to plain air doctrine, specifically getting to the Gillespie v. Chrysler Motors case. And I think that that argument is flawed. It's something that's laid out in the briefs. And I feel it's flawed. It's that, first and foremost, I did object during the time of the closing arguments as to the characterization of drug addicts. It was made on multiple occasions. I objected on two set occasions. And... Well, let me ask you, with respect to Harry at least, wasn't that a reasonable inference from the evidence that he's been convicted? And plus, in his autopsy, he's got methadone in his system. And methadone is a drug used to treat heroin addiction. Isn't that a reasonable inference from the evidence that he's a drug addict? Respectfully, Your Honor, I disagree with that. And the reason I disagree is that, with regards to Gary Griglione, there was no indication that he... There was no evidence that he was a drug addict. There was no evidence that he was a convicted felon. Of course, we have a combination from the autopsy reports of methadone and alcohol in his blood system. And that was one of the points I was going to get to later, is that why I feel that these are extremely prejudicial. And they do cause substantial harm. I don't think that they're slight harm, as the defendant argues. And the reason is, methadone, as the court's aware, is a drug that's used to treat heroin addiction. And I think, you know, when we talk about gilding the lily, defense counsel said he was a meth addict. And, you know, street terms for meth don't necessarily relate to methadone. Respectfully, I think they relate to methamphetamines. Speed, things along those lines. And I think that there's, you know, a certain mischaracterization as it relates to the word meth. It's not necessarily... You know, one is an extremely addictive drug, which can cause all sorts of problems. The other is a drug that's being used for purposes of treating a drug addict. Right? I agree, but I think when it's continually mentioned and continually done, despite objections, I don't think that a curative instruction is sufficient to allow the plaintiff to have a fair trial in this particular matter. The issues that were contested... There was a curative instruction offered by the trial court. After, on both occasions, the statements were made during the closing argument by Mr. Kruger. I made the objections. The judge made a curative statement. The judge further warned counsel about using said remarks, and then they were used again, and they were used again. And I made the objections on two of the occasions. I did not make objections on every occasion. And that, to some degree, was trial strategy. And I didn't want to, myself, lend further emphasis in front of a jury as to what they should be paying attention to. But the objections were made on several occasions. And I don't think the curative instruction was sufficient. And upon reflection, I feel that Judge Heddle's ruling was pretty clear on that as well. The post-trial motion here... I'm sorry. Well, I'm saying it was Judge Heddle's ruling that it was fair to refer the closing argument to the driver of the motorcycle, Mr. Griglione, as a drug addict. His ruling, at least consistent with his written order, was that they were inflammatory statements and that part of the... notwithstanding the personal responsibility arguments, that those inflammatory statements were, again, part and parcel of the reasons why he decided to grant a new trial on the matter. Well, let me ask you this, too. When he was granting a new trial, one of the things Judge Heddle said was the only question presented at trial was whether the liquor consumed at the defendant bar caused the AIP's intoxication. Do you agree with that? Is that the issue? I agree that that was one of the issues at the trial. I don't agree that it was the only issue. I think another issue, and it's an issue that's raised in a defendant's brief, is whether or not the intoxication played a role in the accident. However, especially the only testimony that we had with regards to that was Lieutenant Jacobson of the Sheriff's Department who did the accident reconstruction. He said that while speed was also a factor, that the intoxication of Mr. Griglione certainly played a portion, a part and parcel, in the role of the accident. I think the only issue and contention was not whether or not he drank at Jim's office lounge, but whether or not that alcohol caused his intoxication. And could the jury conclude that the intoxication of the passenger on the back of the motorcycle who outweighed the driver by 50% could cause the accident? Was he causing the accident? It would be speculative for them to do so. I would submit. There was no evidence of any nature indicating that what she did or didn't do on the back of the motorcycle, which could have affected the driver. The only evidence we have is that they were riding down the road, and this is by an individual who happened to be himself riding a bicycle along Route 6 there at 1230 in the morning. He didn't have his driver's license, Your Honor. He just went off for a nice evening ride, I guess. But I would... Mr. Papperell, I'm going to fop on that argument because you've talked a lot about the disparaging remarks made about Gary and Roxanne, but in fact, I mean, what needs to be proven are the three elements that, you know, they had the establishment they served him alcohol, and the alcohol or the intoxication caused the accident. Isn't this more about the statements relating to personal responsibility and not just that she chose to get on the back, but like Justice Schmidt alluded to, the fact that she outweighed him? I mean, the instructions as I read them and the elements, there's no role for her decision to get on that bike or her weight or whatever. I mean, are those elements or are those defenses to the elements as you see them? I understand your point, Justice O'Brien, and I feel that they're not elements to the underlying cause of action, and when the complicity arguments were denied prior to going into closing arguments, I think that her actions were not a part of the case any longer at that point in time. That we're looking at whether or not they sold the alcohol, the alcohol played a role in the accident, and so on. So the statements then, the closing argument, again about her responsibility and these other things, that are really what led Judge Heddle to decide that a new trial was warranted. I mean, those... I'm sorry? Those make the crux of what he's saying, is that... I would agree. The crux of his written order is that the arguments with regards to personal responsibility were of such a prejudicial nature that the plaintiff was denied a fair trial. Of course, there's the addition of the inflammatory remarks, but that's a large part and parcel of his order in this particular matter. That under our standard of review, we would have to show that it would be unreasonable for anyone to believe that those would be so prejudicial as to warrant a reversal of the judge's order. I agree with that, and I don't think... Under the standard review we have present here today, I believe that what we're looking at is whether he used his discretion, whether or not it was reasonable for him to find the way he did when he had the... for lack of a better way to say it, the bird's-eye view of the way the jury reacted to arguments and such. I completely agree with you, Justice. The personal responsibility you didn't object to during the closing argument, correct? That is correct, Your Honor.  when you stood up for your closing argument was that there's nothing in the law that is correct as well, Your Honor. So you were well aware of that when the defense counsel was up there making those arguments. Well, I was well aware that I needed to address it in my rebuttal, Your Honor. Well, you know, it was not an issue and you made a decision not to object to it. At that point in time, I did not object to it, Your Honor. Let me ask you, in post-trial motions, a lot of talk about prejudicial comments made about the decedent, the plaintiff's decedent. I guess we've got a couple of decedents here. The plaintiff's decedent. What was prejudicial? What was improper about it? Well, I feel what was prejudicial and what was prejudicial about it specifically, Your Honor, was the inferences that are made. She's running around with two drug addicts. I don't think it's a far stretch for jurors to hear that and, you know, as we're all told as we're going up to somebody to see what their friends are, so to speak. I think that's prejudicial. But you're asking the jury to reduce her life to a dollar figure and so isn't her character and what she's doing, isn't that relevant? Damage is evidence. Well, I don't believe so. The damage evidence, we're talking about the loss of a mother of two small children, not a young lady who's under two years old but the same time and then we also have, of course, we have Nicole's mother and the family. Of course, the cause of action was brought for the children. I know, but part of the argument is this lady is a great mother and these kids lost the society of this wonderful mother and in the defense, if they're brave enough to put on evidence that says well, no, not so great a mother, she's out at midnight drunk and on the back of a motorcycle with a drug addict. And they throw in the taboo subject with regards to being in the backseat of the car with a married man and things along those lines. I think when you couple all that, there's severe prejudice. Thank you, Your Honor. I just had a brief question, and I'm sorry if I'm marking this with a question. As has been pointed out by Justice O'Brien, the standard here is abuse of discretion and I don't feel that Judge Heddle abused his discretion in regards to this particular matter. He was able to view the jury. He was able to see what effects any and all statements had on them. There most certainly was plain error and coupled with it the other statements, inflammatory statements, I'm sorry, should be affirmed. Thank you, Your Honor. Thank you, Mr. Paparella. Mr. Carlson, you may reply. Mr. Court, the plaintiff's counsel said on multiple occasions that this standard here is abuse of discretion. I believe that's not exactly correct. The case of Bishop v. Boz explains that the appellate court will not disturb a trial court's decision to grant a new trial unless there's a clear abuse of discretion. But it then goes on to say that there's a further test that must be applied when the plaintiff fails to object at trial and goes on to explain the waiver doctrine. It says that unless there's plain error that was so egregious that it deprived the plaintiff of the right of fair trial and substantially impaired the integrity of the judicial process itself that you have to look to that test. That's not the standard which is before this court here today. The plaintiff's counsel also mentioned a couple of times that the trial court was in a better position to assess the verbal pauses or any other issue which may not have come up in the actual transcripts. There's been no allegations of what those verbal pauses were or that they even existed. There's just a blanket allegation that they may have had some effect. The plaintiff's counsel also indicated that there was no evidence that Gary Briglione was a drug addict. That did not come up in trial. I did note in a footnote to my brief that Roxanne Briglione testified in her deposition that her husband was a drug addict. So it's not that we're just making facts up. These are facts that although they did not come out at trial actually are factually correct. To the word meth, that was something that was not objected to. Frankly, I don't see a big distinction in people's opinions between methamphetamines and methadone. It's a street term, as I mentioned in my brief, for methadone. One of the slang terms is drunky juice. Quite frankly, methadone doesn't have that term, so I'm not sure what sort of additional prejudice there is by the use of that term, incorrect as it is. I would also like to note that the objections to the characterization were made on only two occasions. The first objection and then the diction was mentioned once again and there was another objection which was sustained. It happened multiple times, but it was not more than two. And finally, in regards to personal responsibility, I think this has been well argued, but this was an issue which was raised and Attorney Paparelli is a very skilled attorney. He brought up personal responsibility as soon as he began his rebuttal argument. He said that was a tactical decision on his part not to object to it at the time of trial and now he has waived any arguments regarding that now, unless there is plain error. Are there any questions? I don't believe there are. Thank you very much. Thank you, counsel, both for your arguments in this matter this afternoon. It will be taken under advisement and a written disposition shall issue.